**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLE ASIA BUSINESS CENTER, INC., a Philippines corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT D. MANNING, an individual; DEBTORWISE FOUNDATION, a Delaware corporation,<br><br>Defendants. | Case No. CV 12-00956 DDP (CWx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ACCESS'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING JOINDER**<br><br>[Dkt. Nos. 78, 80] |

Presently before the court is Counterdefendant and Third Party Counterdefendant Access Counseling, Inc. ("Access")'s Motion for Partial Summary Judgment on Third Party Complaint of Counterclaimants Robert Manning and DebtorWise Foundation ("Counterclaimants"). Counterdefendants Cole Asia Business Center, Inc., Cole Group, Inc., and Sevan Aslanyan filed a Notice of Joinder in the Motion.

**I. Background**

The following facts are not disputed.

Counterdefendant and moving party Access is a Delaware non-profit corporation that was formed in November 2010 and provides on-line and telephone courses that are required for individuals who are filing for bankruptcy protection. (Jemelian Decl. ¶¶ 2-3.) Counterclaimant Robert Manning is the founder of DebtorWise, a non-profit corporation that is licenced to provide bankruptcy education courses. (Id. at ¶¶ 6-8.) Manning and DebtorWise were sued by Cole Asia Business Center, Inc. ("Cole Asia"), which alleged that DebtorWise failed to pay the amount due for services rendered. (Compl. ¶¶ 5-11.)

Manning and DebtorWise filed a Counterclaim and Third Party Complaint against Cole Asia, Access, Cole Group, Inc., and Sevan Aslanyan ("Counterdefendants"). Counterclaimants alleged, among other things, that they had entered into an agreement with Aslanyan whereby Aslanyan's company Access would use Manning's bankruptcy courses but would not contact, solicit, or market to clients on Manning's Client List (the "Client List").[1] (Third Party Compl. ¶ 23.) Counterclaimants allege that they provided the Client List to Access, including some fictitious names, and discovered that Access had violated its agreement by conducting a mass mailing to all names on the list. (Manning Decl. ¶ 31.) Counterclaimants also allege that Cole Asia jammed DebtorWise's phone lines and sent Access's advertising materials to DebtorWise customers when they called for information. (Manning Decl. ¶ 29.)

///

///

[1] The parties refer to this list as the "no fly" list.

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

Access moves for summary judgment against Counterclaimants on Counts 3 through 10 of the Third Party Complaint.

**A. Breach of Contract (Count 3) and Misappropriation of Trade Secrets (Count 8)**

In their Third Claim for Relief Counterclaimants allege that Access breached an oral and written agreement that Access would not solicit DebtorWise's clients. (Third Party Compl. ¶¶45-46.) Access argues that the alleged contract is an illegal restraint of trade under California Business and Professions Code § 16600 and is therefore not enforceable.

In Counterclaimants' Eighth Claim for Relief, they allege that Access misappropriated trade secrets. Access argues that the Client List was not a trade secret because it was compiled from publicly available sources and DebtorWise did not make reasonable efforts to maintain its secrecy.

California Business and Professions Code § 16600 states: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Such restraints include customer nonsolicitation agreements. See Edwards v. Arthur Anderson LLP, 44 Cal.4th 937, 948 (2008). See also Dowell v. Biosense Webster, Inc., 179 Cal. App. 4th 564, 574 (2009).

There are some exceptions to these restrictions. "Under CBPC § 16600, it is well established that broad covenants not to compete are void unless they involve a situation where a person sells the goodwill of a business or where a partner agrees not to compete in anticipation of dissolution of a partnership, or they are necessary to protect trade secrets." Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009)(internal citations, quotation marks, and alterations omitted). A client list can be a trade secret. "[I]nformation about . . . customers [can be] protected because it [is] confidential, proprietary, and/or a trade secret . . . [T]he list of customers, not ordinarily entitled to judicial protection, may become a trade secret, if there is confidential information concerning the value of these customers." Thompson v. Impaxx, Inc., 113 Cal. App. 4th 1425, 1429 (2003) (internal citations and quotation marks omitted).

The issue here is whether the agreement by Access not to solicit clients identified on the Client List falls within the prohibition of § 16600 or is permissible as protecting a trade secret. A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or

potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1.

There may well be an issue of fact as to whether the Client List meets the first criterion for a trade secret. Access asserts that the Client List was compiled from publicly available sources, but this in itself does not prevent it from being a trade secret. If Counterclaimants put significant effort into the Client List creating something more valuable from the publicly available records, it may well be protectable as a trade secret. See, e.g., Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1521-22 (1997) (internal citations and quotation marks omitted)("[W]here the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. Such lists are to be distinguished from mere identities and locations of customers where anyone could easily identify the entities as potential customers. As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret."); MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993) ("The Customer Database has potential economic value because it allows a competitor . . . to direct its sales efforts to those potential customers that are already using the [plaintiff's] computer system."); and Barney v. Burrow, 558 F. Supp. 2d 1066,

1079 (E.D. Cal. 2008) ("A customer list acquired by lengthy and expensive efforts deserves protection as a trade secret.").

Counterclaimants point to the various efforts expended on assembling the Client List. Manning's declaration describes the "multi-prong acquisition and retention strategy" used to develop and maintain the list. (Manning Decl. ¶ 24.) Some of these efforts appear to have been directed at developing personal relationships with attorneys on the list, by sending promotional "Welcome Packages" to new members of the National Association of Consumer Bankruptcy Attorneys ("NACBA"), attending NACBA conferences, golf outings with bankruptcy attorneys, and lotteries for free courses and gifts. (Id.) It is not clear to what extent these actions modified the content of the list; instead, they appear to be directed toward retaining current clients. Other efforts do appear directed at establishing the list itself, including reviewing lists from bankruptcy sources to purge creditors and corporate bankruptcy attorneys who were not potential clients and hiring a paid consultant to assist in compiling the original list. (Id.)

Assuming arguendo that Counterclaimants have established a question of fact as to the amount of effort put into the Client List and therefore to its potential protectability as a trade secret, Counterclaimants must still show reasonable efforts to maintain secrecy. Trade secret protection may be lost or terminated by public disclosure. "Public disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret. 'If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the

information, or otherwise publicly discloses the secret, his property right is extinguished.'" In re Providian Credit Card Cases, 96 Cal. App. 4th 292, 304 (2002), citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984).

Access asserts that DebtorWise in effect sent a Client List to a competitor - Access - without seeking to protect the list. Counterclaimants respond that Access was not a competitor of DebtorWise at the time it provided Access the Client List. (Manning Decl. ¶ 13.) Manning states that DebtorWise and Access agreed that the two companies would not be competing for the same clients. (Id. ¶ 22.)

Counterclaimants' argument that Access was not a competitor boils down to their alleged agreement that Access would not contact the parties named on the Client List. But this does not mean that Access and DebtorWise were not competitors. Counterclaimants are essentially arguing that by providing the purported trade secret - the Client List - to a potential competitor, that potential competitor was no longer a competitor. In other words, Access and DebtorWise appear to have been competitors who purportedly agreed not to contact the same clients, as identified in the Client List. The nature of the purported agreement belies the claim that the two companies were not competitors; if Counterclaimants felt compelled to provide a list of names that Access should not contact, it would appear to be because contact from Access might have resulted in Access taking clients from DebtorWise.

In short, the court finds that even if the Client List is not publicly available, Counterclaimants shared that list with a competitor, Access, and thus the Client List is not protectable as

a trade secret. As a result, the agreement not to contact the names on the Client List violates § 16600.

"Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets." Thompson v. Impaxx, Inc., 113 Cal. App. 4th 1425, 1429, 7 Cal. Rptr. 3d 427, 429 (2003). Here, the antisolicitation agreement was not formed to protect the trade secret; instead, the trade secret was used to determine which clients could not be solicited by Access. Under such circumstances, the policy of exempting trade secrets from the prohibition on business restraints is not served by protecting Counterclaimaints' Client List. The court GRANTS summary judgment in favor of Access on Counts 3 and 8.

**B. Fraud (Count 4)**

Access argues that the fraud claim is devoid of any allegations against Access; that Access was not formed until November 2010 but that the agreement was dated September 1, 2010, so it cannot be liable; and that to the extent that the allegations of fraud against Access are based on the alleged use of the Client List, any agreement not to use the List was unenforceable.

Counterclaimants respond that the Call Center Agreement was negotiated and signed in January 2011 but backdated to September 2010, and that Access therefore should be liable for representations in the contract negotiation. (Manning Decl. ¶ 18; Manning Depo. 205:24-209:13.)

The Countercomplaint makes several allegations that exceed the use of the Client List. It alleges that "Counterdefendants caused DebtorWise to lose several hundreds of clients per month due to their actions, including by misappropriating DebtorWise account

files and transferring them to Access as well as soliciting DebtorWise clients and those requesting information from DebtorWise." (Countercompl. ¶ 34.) Although solicitation of DebtorWise's clients cannot be part of the fraud claim because any agreement not to solicit clients is unenforceable, as discussed above, allegations of misappropriating account files and sending Access materials to clients who requested DebtorWise materials do fall within a fraud claim. DebtorWise has produced an email trail from a legal assistant who states that she requested DebtorWise information cards by phone but received Access cards.[2] (Manning Decl., Exh. E (Dkt. No. 88-1 at 29).)

Because Counterclaimants have established an issue of fact as to whether the contract was backdated and have stated a claim for fraud that exceeds their claims regarding the Client List, the court GRANTS IN PART AND DENIES IN PART summary judgment on this count. The fraud claim survives to the extent that it does not depend on allegations regarding the nonsolicitation agreement.

**C. Conspiracy to Commit Fraud (Count 5)**

"In order to maintain an action for conspiracy, a plaintiff must allege that the defendant had knowledge of and agreed to both the objective and the course of action that resulted in the injury, that there was a wrongful act committed pursuant to that agreement, and that there was resulting damage." Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 823 (2005).

---

[2] Access objects to this evidence as lacking in foundation, lacking basis for personal knowledge of declarant, improper hearsay, argumentative, and irrelevant. But Counterclaimants are not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"Civil conspiracy is not an independent tort. Rather, it is a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Id. (internal citations and quotation marks omitted).

Counterclaimants allege that "Counterdefendants acted in concert to deprive counterclaimants of the benefits of the agreements alleged hereinabove and conspired together [to] engage in unfair and deceptive billing practices, and acted together in attempt to defraud DebtorWise and to destroy DebtorWise's business operations . . . ." (Third Party Compl. ¶ 58.)

Access argues that Counterclaimants have failed to allege that Access was aware of any fraud against Counterclaimants or intended for any fraud to be committed, and that therefore Access is entitled to summary judgment on this claim. As discussed above, Counterclaimants have alleged that Access was involved in misdirecting materials and appropriating DebtorWise account files, in connection with the other Counterdefendants. This is sufficient to make Access potentially liable for the torts of the other Counterdefendants, and vice versa.

The court therefore GRANTS IN PART AND DENIES IN PART summary judgment on the conspiracy claim. The claim survives to the extent that it does not depend on the nonsolicitation allegations.

**D. Preemption of Counts 6, 7, and 10**

Access argues that Counterclaimants' claims for interference with contractual relations, interference with prospective business advantage, and unfair business practices fail because they are preempted by the California Uniform Trade Secrets Act ("UTSA").

Cal. Civ. Code § 3426 et seq. The UTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939, 958 (2009) (quoting Digital Envoy, Inc. v. Google, Inc., 370 F.Supp.2d 1025, 1035). The UTSA "does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7.

Here, Counterclaimants do make allegations against all Counterdefendants going beyond their trade secret claims. Additionally, as discussed above, they allege that Access in particular not only breached the unenforceable nonsolicitation agreement, but also participated in a scheme to take business from DebtorWise and transfer it to Access by transferring account files and sending Access materials to clients who requested DebtorWise materials.

For these reasons, the court finds that Counts 6, 7, and 10 are not per se preempted by the UTSA.

**E. Interference with Contractual Relations (Count 6) and Prospective Business Advantage (Count 7)**

To prevail on a cause of action for interference with contractual relations and for intentional interference with prospective business advantage, a party must prove, among other things, actual breach or disruption of a particular contractual relationship. See Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990)(regarding inference with contractual relations) and Youst v. Longo, 43 Cal. 3d 64, 71 (1987)(regarding intentional interference with prospective business advantage).

Access argues that DebtorWise cannot establish that element of the tort because it has failed to identify a single contract with which Access interfered. Access points to the depositions of Koziol, who said he did not know of any written agreements with attorneys who agreed that they would only and exclusively refer their clients to DebtorWise. (Exh. D, Koziol Depo., 70: 12-15.) Koziol did indicate that he knew of one such oral agreement. (Id., 70:25-71:19). Access also cites Manning's deposition testimony, where he could not recall the names of any attorneys or law firms with whom DebtorWise had an exclusive agreement. (Exh. B, Manning Depo., 24: 21-25:13.) Counterclaimants respond by pointing out that Manning also indicated that he "presented that information in prior discovery." (Id. 30:5-11.)

Counterclaimants are not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Crop. v. Catrett, 477 U.S. 317, 324 (1986). However, they must produce evidence sufficient to create a genuine dispute of material fact. Counterclaimants indicate that they did provide names of specific clients to Access prior to the deposition testimony of Dr. Manning, but they do not identify any of those contracts for the court in their opposition papers. In the absence of any evidence or identifying information regarding a contract that Access interfered with, the court can find no genuine dispute of material fact as to either of these causes of action.

The court GRANTS summary judgment on these counts.

**F. Copyright Infringement (Count 9)**

Access moves to dismiss Counterclaimants' claim of copyright infringement (copying sections of DebtorWise's website) on the

ground that DebtorWise does not have a federally registered copyright. A copyrighted work must be registered before an infringement action can be brought. 17 U.S.C. § 411(a).[3] "[R]eceipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)." Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 621 (9th Cir. 2010).

It is undisputed that Counterclaimants have not produced a registration certificate. They have, however, produced an email receipt confirming that an "application and fee for the work DebtorWise website was received on 03/12/12." (Upchurch Decl. ¶ 23, Exh. C.) Access objects to this evidence as lacking foundation, lacking basis for personal knowledge, violating the best evidence rule, improper hearsay, and irrelevant. This objection is overruled. The court finds that the email receipt is sufficient to create an issue of material fact as to whether DebtorWise had a registered copyright. The court takes judicial notice of the fact that the only receipt the Copyright Office provides for online applications is the email receipt. See http://www.copyright.gov/help/faq/faq-what.html#received ("If you

---

[3] Refusal of a copyright registration by the Copyright Office does not bar an infringement suit. "[W]here the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue." 17 U.S.C.A. § 411.

apply for online, you will receive an email stating that your application has been received. Otherwise, the Copyright Office does not provide a confirmation of receipt.”).

The court therefore DENIES summary judgment on this issue.

**G. Unfair Business Practices(Count 10)**

Access argues that to the extent that this claim is based on the alleged breach of the covenant not to compete, it is barred because such an agreement is an illegal restraint on trade as discussed above. The court has already determined that the claims against Access are not limited to the nonsolicitation agreement. Therefore, summary judgment is GRANTED IN PART AND DENIED IN PART. The claim survives to the extent that it is based on those alleged actions of Access not dependent on the nonsolicitation agreement.

**H. Joinder by Counterdefendants**

Cole Asia Business Center, Inc., Cole Group, Inc., and Sevan Aslanyan filed a joinder in the Motion. However, the factual allegations against Access are different than the allegations against the other Counterdefendants, and Access offers some evidence applicable only to Access and not to the other Counterdefendants. The court declines to speculate on which of Access’s arguments and pieces of evidence might apply to the other Counterdefendants and DENIES joinder.

//

//

//

//

//

//

**IV. Conclusion**

For the reasons stated above, the court GRANTS summary judgment in favor of Access on Counterclaims 3, 6, 7, and 8; GRANTS IN PART AND DENIES IN PART summary judgment on Counterclaims 4, 5, and 10; and DENIES summary judgment on Counterclaim 9. The joinder is DENIED.

IT IS SO ORDERED.

Dated: June 18, 2013

DEAN D. PREGERSON
United States District Judge